UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Habersham Plantation Corporation, a Georgia Corporation, and Habersham Investment Partnership, L.P., a Georgia limited partnership, <br><br> Plaintiffs, <br><br> v. <br><br> Art & Frame Direct, Inc., a Florida Corporation, World of Decor, Inc., a Florida Corporation, The Liquidation Station, Inc., a Florida Corporation, Global Importing, Inc., a Florida Corporation, World of Decor Blue Heron, LLC, a Florida Limited Liability Company, Closing Forever, LLC, a Florida Limited Liability Company, Decorator's Reserve, Inc., a Texas Corporation, Art & Frame Direct/Timeless Industries Georgia, Inc., a Georgia Corporation, and World of Décor, Inc., a California Corporation. <br><br> Defendants. | Civil Action No. 10-61532-CIV – (COHN/SELTZER) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO EXCLUDE DEFENDANTS' EXPERT CHRISTOPHER J. BOKHART**

Defendants' damages expert, Christopher J. Bokhart, offers nothing but attorney argument, unsupported by any reliable methods or expert analysis. As such, his opinions are inadmissible under Federal of Civil F.R.E. 702, *Daubert*, and *Kumho Tire*.

Habersham accuses Defendants of copying nineteen (19) of its copyright-protected furniture designs (the "Asserted Designs"). Not only did Defendants blatantly knock-off Habersham's furniture designs, but they also advertised the knock-off goods in some of the same

magazines in which Habersham advertises, and used the knock-offs to steal customers who had previously been purchasing from Habersham.

Habersham has submitted the expert report of Michael Pakter, calculating Habersham's lost profits and prejudgment interest resulting from Defendants' sale of knock-off furniture products. In response, Defendants submitted the expert report of Mr. Bokhart. Mr. Bokhart criticizes Mr. Pakter's lost profits calculation, but does not provide any alternative calculation. Instead, Mr. Bokhart provides a purported "reasonable royalty" analysis, and an analysis of Defendants' profits. However, Mr. Bokhart's analysis is based on faulty legal and factual assumptions. As such, Mr. Bokhart's opinions amount to no more than attorney argument and they are inadmissible.

## I.   THE RELEVANT LEGAL STANDARDS

### A.   Expert testimony must be reliable.

A party proffering the expert opinion testimony must show:

> (1) the expert is qualified to testify competently regarding matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

F.R.E. 702; *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). Thus, expert opinion testimony is inadmissible if the proffered opinion does not draw upon an expert's scientific, technical, or specialized knowledge, or if the expert does not use a reliable methodology to apply that scientific, technical, or specialized knowledge to the facts in the case. F.R.E. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Expert opinion testimony must also be relevant. *Pinero v. 4800 West Flagler L.L.C.*, 2011 WL 2419773, at *1 (11th Cir. 2011). Thus, an expert's opinion is also inadmissible if it is relates to only irrelevant or immaterial issues. Mere expertise is not enough; a district court should not

admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The district court has a duty to "make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in a relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). District courts must act as "gatekeepers" under the Fed. R. Evid. 702 and *Daubert* to ensure that the expert has specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).

**II.     MR. BOKHART'S EXPERTISE IS LIMITED TO ACCOUNTING AND FINANCIAL ANALYSIS.**

Mr. Bokhart is not a lawyer, and even if he were, legal conclusions would still be the exclusive province of the Court. *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir.1990). His apparent expertise is limited to "accounting, economic and financial analysis." (Exh. A, Bokhart Dep. 4-5, June 30, 2011.) As a result, Mr. Bokhart's testimony is only helpful to the jury insofar as he applies sound accounting, economic or financial analysis to a particular set of facts.

**III.    MR. BOKHART'S OPINIONS ON CAUSATION, THE *PANDUIT* FACTORS, ARE INADMISSIBLE LEGAL CONCLUSIONS.**

Mr. Bokhart's report is comprised, almost entirely, of legal conclusions. First, he intends to opine on the solely *legal* conclusion of whether there is sufficient evidence of lost profits in this case. One method of proving that Habersham suffered lost profits "but for" Defendants' infringement is to apply the factors set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). The four *Panduit* factors the intellectual property holder must establish are: (1) demand for the patented product; (2) absence of acceptable non-infringing

3

substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit the patentee would have made.[1]  *Id*.  To evaluate these factors, the court must weigh financial and non-financial evidence; as a result, the ultimate decision as to whether a particular case meets the *Panduit* factors is a legal conclusion, and not appropriate for expert testimony.

Mr. Bokhart has nevertheless announced that he intends to opine on the *Panduit* factors – and not solely on financial issues which may relate to the *Panduit* factors, but also on other non-financial evidence.  This proposed testimony is clearly inadmissible.  For example, he argues (apparently ignoring the *Panduit* factors altogether) that the only appropriate method of proving lost profits is a "customer-to-customer comparison of Habersham's and AFD's sales data." (Exh. B, Bokhart Rep. at 10-11.)  At his deposition he attempted to offer further arguments on the factors of demand (Exh. A, 119-123), on acceptable non-infringing substitutes (Id. at 122-126), and on capacity (Id. at 126-130.)

Nothing in Mr. Bokhart's report or deposition testimony even approximates an actual financial analysis or calculations; he is merely arguing over how to interpret ordinary evidence. Thus, he is doing nothing more than offering inadmissible legal arguments and opinions. *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).  Mr. Bokhart's opinions are not unlike those proffered in *Yossifon v. City of Cocoa Beach, Fla.*, 2003 WL 25781417, 1 (M.D. Fla. 2003.)  In *Yossifon*, the proffered expert attempted to testify as to the purported lack of a "causal link" between the claim asserted in the case and the resulting

---

[1] The *Panduit* factors are but one way of proving "but for" causation for lost profits. *See Bic Leisure Prods., Inc. v. Windsurfing Int'l Corp.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("properly applied, the Panduit test is an acceptable, though not exclusive test for determining 'but for' causation."); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) ("Panduit is not the *sine qua non* for proving 'but for' causation. If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable."). Moreover, Habersham notes that for most of the Asserted Designs, the parties are operating in a two-supplier market, meaning that it is reasonable to infer that Habersham would have made the sales made by Defendants. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, Ltd., 72 F.3d 857 (Fed. Cir. 1995).

damages.  *Id*.  Like Mr. Bokhart, the expert in *Yossifon* had no place testifying as to ultimate legal conclusions.  *Id.*

Mr. Bokhart has not done any calculations relating to the various *Panduit* factors.  He is merely stating the conclusions that he, and his attorneys, would wish him to state.  Mr. Bokhart is no more qualified in this area than an ordinary juror.  Moreover, the *Panduit* factors are legal conclusions upon which Mr. Bokhart is not qualified to opine.  Accordingly, all testimony from Mr. Bokhart regarding causation and the *Panduit* factors must be excluded.

### IV.     MR. BOKHART'S OPINIONS ON THE APPROPRIATE MEASURE OF DAMAGES ARE INADMISSIBLE LEGAL CONCLUSIONS.

Mr. Bokhart's legal conclusions as to what is the "appropriate" measure of damages in this case are also inadmissible.  Mr. Bokhart affirmatively stated in his expert reports that "***the*** appropriate measure of damages…would be a reasonable royalty" (Exh. B ¶ 2, emphasis added), and that "lost profits is ***not*** an appropriate form of damages" (Id.  ¶ 36, emphasis added).  But at his deposition he told a different tale;  he was unwilling to commit to the statement that a reasonably royalty is "the" appropriate form of damages, instead only saying that it "may" be.  (Exh. A, 104-109.)  Significantly, Mr. Bokhart could not identify an objective financial analysis or accounting methodology for determining whether to apply a reasonable royalty to a particular case.  (Id.)  Instead, he simply argued that the fact that the knock-off goods are cheaper than genuine Habersham goods somehow eliminates lost profits.  (Exh. A, 117:10-13)

The decision of whether to apply a reasonable royalty or a lost profits calculation is the sole province of the Court and the jury, and depends on non-accounting and non-financial factors, such as the *Panduit* factors.  Mr. Bokhart has not conducted any sort of objective financial or accounting analysis on this issue, and offers only argument.  Accordingly, Mr.

5

Bokhart has no more expertise on this issue than an ordinary juror would, and his testimony must be excluded.

### V.     MR. BOKHART'S REASONABLE ROYALTY ANALYSIS IS INADMISSIBLE

Mr. Bokhart argues that a "reasonable royalty" in this case would be ▉. While there is plenty wrong with the methodology (addressed below) that Mr. Bokhart relied upon to arrive at that number, the figure proposed by Mr. Bokhart is ludicrous on its face. Mr. Bokhart concedes that Defendants' total sales of the accused products are ▉. Mr. Bokhart would have the Court and the jury believe, that in a hypothetical reasonable royalty negotiation, Habersham would license a ***competitor***[2] to copy its products, for a mere ▉ of that competitor's sales revenue – all the while allowing the competitor to significantly undercut Habersham's prices. That argument (and it is nothing more than argument) simply does not pass the "smell test," and as a result Mr. Bokhart's testimony is unreliable on its face.

#### A.     **Mr. Bokhart is not qualified to opine regarding negotiations relating to copyrights or the furniture industry.**

One reason Mr. Bokhart's reasonable royalty analysis does not pass the "smell test" is that he is not qualified to testify as an expert regarding copyright or furniture license negotiations. One way to estimate a reasonable royalty is to consider a "hypothetical negotiation" between the parties which takes place at the time the infringement begins. *Georgia-Pacific Corp. v United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). The Court considers a variety of factors known as the *Georgia-Pacific* factors, in connection with that hypothetical negotiation. But Mr. Bokhart admitted at his deposition that he has no experience running a manufacturing business, negotiating licenses specifically relating to copyrights, or negotiating licenses specifically relating to furniture. (Exh. A, 7-9, 11-12, 21.)  He is no more

---

[2] Mr. Bokhart incredibly tries to argue that Habersham and Art Frame are not competitors because Defendants' knock-offs are cheaper.

qualified to evaluate the *Georgia Pacific* factors than a juror would be. Accordingly, he does not have any specialized skills or knowledge that will assist the jury in evaluating a hypothetical negotiation or reasonable royalty. *See, e.g. Thornton v. J Jargon Co.*, 580 F.Supp.2d 1261 (M.D. Fla. 2008) (holding that a retroactive license fee was not an appropriate measure of damages since the plaintiff had never licensed a copyright to his play before).

  **B. Mr. Bokhart relies on irrelevant license agreements.**

Mr. Bokhart also bases his reasonable royalty opinion on wholly irrelevant license agreements. None of the licenses he relies upon bear any real relevance to the instant case; they are for trademarks, not copyrights, and even Mr. Bokhart admits that none of these licenses are for allowing a competitor to make the exact same product the licensor is already making. (Exh. A, 198-208.) As such, these licenses are irrelevant to any reasonable royalty analysis where the hypothetical negotiation is occurring between two competitors. Moreover, Mr. Bokhart's "opinion" amounts to no more than mere argument about the interpretation and/or impact of these license agreements – he performs no actual accounting or financial analysis to evaluate their impact on a reasonable royalty rate.

  **C. Mr. Bokhart ignores the fact that Habersham would never license its furniture designs to anyone.**

As set forth above, Mr. Bokhart's "analysis" of *Georgia Pacific* factors is mere argument, devoid of any financial or accounting analysis. This absence of substantive analysis is perhaps most clear when considering Mr. Bokhart's treatment of the fact that Habersham would never willingly license its furniture designs to a competitor. (Exh. A, 265-272.) Mr. Bokhart agrees that this is an "important" factor to consider. But when asked if he would ever change his opinion, even when faced with strong evidence on this factor, he said it would not.

  Q. If you get to hear Mr. Eddy and Mrs. Eddy testify at trial that they would never under any circumstances license these products, they'd rather see

7

     the company go under first, would that cause you to increase your reasonable royalty opinion?

***

A.  If it is as you stated, it probably would not.

Q.  Is there anything that would?

A.  Likely, but there is nothing that comes to mind.

(Exh. A, 271-272.)  Hence, it is clear that Mr. Bokhart is not offering expert analysis, but merely biased conclusory argument.

### D.  Mr. Bokhart applies improper methods of calculating Defendants' profits.

Mr. Bokhart makes a calculation of Defendants' profits as part of his reasonable royalty analysis, but in so doing ignores well established law that general administrative expense and overhead cannot be deducted for purposes of damages calculations.  *Caffey v. Cook*, 409 F. Supp. 2d 484, 504-505 (S.D.N.Y. 2006); *Baldwin Cooke Co. v. Keith Clark, Inc.,* 420 F.Supp. 404 (7th Cir. 1976) (holding that the defendant did not prove that general administrative and overhead expenses would not have occurred but for the infringement).

### VII.  MR. BOKHART'S CRITICISMS OF MR. PAKTER ARE MERELY TOPICS FOF CROSS-EXAMINATION OF MR. PAKTER

After engaging in his inappropriate reasonable royalty analysis, Mr. Bokhart then spends several pages criticizing Mr. Pakter's calculations.  Significantly, for all of Mr. Bokhart's criticism, he never offers any alternative calculations of his own.  Mr. Bokhart's criticisms are nothing more than a general  list of topics for cross-examination of Mr. Pakter.  For example, Mr. Bokhart argues that Mr. Pakter did not sufficiently account for the impact of the recent recession, but offers no calculations of his own.  He merely points to evidence on the record and presents arguments devoid of any financial analysis.  While he claims that Mr. Pakter "provides insufficient evidence," he never provides and objective methodology or defines what would be

"sufficient." As to consumer confusion and lost sales (Exh. B, 27), Mr. Bokhart merely argues about the evidence – he performs no financial analysis. Similarly, Mr. Bokhart argues that Mr. Pakter should have addressed the low price of the infringing goods by studying price elasticity, but Mr. Bokhart provides no price elasticity calculation himself. (Exh. B 28.) This is not expert testimony; it is merely a list of criticisms unsupported by actual analysis. Setting aside the questionable merit of these criticisms, the proper vehicle for expressing them is through cross-examination of Mr. Pakter.

**VII. MR. BOKHART RELIED ON DOCUMENTS AND DATA THAT DEFENDANTS WITHHELD FROM HABERSHAM – WHILE DEFENDANTS ALSO WITHHELD DOCUMENTS FROM MR. BOKHART THAT HABERSHAM PRODUCED MONTHS AGO.**

Finally, it appears that Defendants' counsel withheld crucial information from both Habersham *and* Mr. Bokhart. Mr. Bokhart was given access to Defendants' "Storis" system, which contains information essential to calculating Defendants' profit margins. While Mr. Bokhart had access to this information as early as April, 2011, it was not provided to Habersham until the day of Mr. Bokhart's deposition on June 30, 2011 – *after the close of discovery*. At the same time, Mr. Bokhart criticizes Mr. Pakter's analysis of variable costs. At Mr. Bokharts' deposition, Habersham discovered that Mr. Bokhart's criticisms were based on an assumption that certain financial statement schedules showing various costs were not available. When Habersham told Mr. Bokhart that those documents had been produced in March, Mr. Bokhart admitted he had never seen them. Since Mr. Bokhart's criticisms of Mr. Pakter were based on this purported lack of documents, he should be precluded from offering those criticisms at trial, since it was apparently Defendants' counsel who withheld those documents from Mr. Bokhart.

## VIII. CONCLUSION

Mr. Bokhart does not have any admissible, relevant opinions to offer at trial. He is not qualified to opine on the *Panduit* factors or other issues relating to causation, nor is he permitted to offer legal conclusions. He is not qualified to testify as to any "reasonable royalty" hypothetical negotiation, and in any event his proposed testimony is not financial analysis but rather nothing more than attorney argument. Finally, his criticisms of Plaintiffs' expert Mr. Pakter amount to nothing more than vague criticisms; he offers no alternative financial analysis or calculations, and no arguments that Defendants' counsel cannot attempt to raise on cross examination. Accordingly, Mr. Bokhart should be excluded from trial.

Dated: July 8, 2011            Respectfully submitted by:

/s/ Cameron M. Nelson

Marlene Silverman, Esq.
GREENBERG TRAURIG, P.A.
333 Avenue of the Americas
Miami, FL  33131
Telephone:   (305) 579-0500
Facsimile:    (305) 579-0717
Email:  silvermanm@gtlaw.com

Richard D. Harris, Esq.
Kevin J. O'Shea, Esq.
Cameron M. Nelson, Esq.
David W. Hannon, Esq.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone:   (312) 456-8400
Facsimile:    (312) 456-8435
Email:  harrisr@gtlaw.com; osheak@gtlaw.com;
NelsonC@gtlaw.com; HannonD@gtlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 8, 2011, I electronically filed the foregoing document with the Clerk of Court using the Court CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record listed on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Marlene Silverman

Marlene Silverman, Esq.
333 Avenue of the Americas
Miami, FL  33131
Telephone:    (305) 579-0500
Facsimile:    (305) 579-0717
Email:  silvermanm@gtlaw.com

# SERVICE LIST
## HABERSHAM PLANTATION CORPORATION, ET AL
## v. ART & FRAME DIRECT, INC., ET AL
## Case No. 10-61532-Civ (COHN/SELTZER)
## UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA

Robert D. Mason, Jr. (admitted *pro hac vice*)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
One West Fourth Street
Winston-Salem, NC  27101
Phone:  (336) 721-3761
Facsimile:  (336) 726-9093
Email:  rmason@wcsr.com

Attorneys for Defendants
**Served via ECF**

Keith D. Munson (Florida Bar No. 935920)
WOMBLE CARLYLE SANDRIDGE & RICE
*A Professional Limited Liability Company*
550 S. Main Street, Suite 400
Greenville, SC 29601
Phone:  (864) 255-5400
Facsimile:  (864) 239-5480
Email:  kmunson@wcsr.com

Attorneys for Defendants
**Served via ECF**