UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61532-CIV-COHN

HABERSHAM PLANTATION CORPORATION,
a Georgia corporation, and HABERSHAM                        Magistrate Judge Seltzer
INVESTMENT PARTNERSHIP, L.P., a
Georgia corporation,

      Plaintiffs,

v.

ART & FRAME DIRECT, INC., a Florida corporation,
WORLD OF DECOR, INC., et al,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary

Judgment [DE 62] and Defendants' Motion to Strike Various Declarations [DE 68].  The

Court has carefully considered the motions, Plaintiffs' Memoranda in Opposition [DE's

113 and 114], Defendants' Replies in support of the motions [DE's 128 and 133], as

well as all of the various statements of facts and exhibits associated with the motions,

whether filed under seal or on the record.

### I. BACKGROUND

Plaintiffs Habersham Plantation Corporation and Habersham Investment

Partnership, L.P. (collectively "Plaintiffs" or "Habersham") filed this action against

various Defendants asserting claims for copyright infringement, trademark infringement,

common law trademark infringement, and trade dress violations under the Lanham Act.

The Defendants are companies based in South Florida and Georgia, and are all owned

by the same three related non-party individuals, in different combinations depending

upon the location and name of the particular Defendant.  Plaintiffs allege that

Defendants have violated Habersham's federally-registered copyrights and trademarks

for certain types of furniture and home decor.

Plaintiffs design, manufacture and distribute their own line of furniture products

that utilize elements from classic European furniture.  Deposition of Robert Williams at

76, Exhibit 11 to Mason Declaration [sealed at DE 90-6].  Plaintiffs sometimes

incorporate off the shelf components manufactured by other companies into their

designs.  Plaintiffs have obtained copyrights for some of their designs and have

pending registrations on many others, all based upon a derivative theory of originality.

Plaintiffs contend that their protected authorship "is in the collective artistry and

expression in the selection, placement, variation and interplay of the various ornamental

elements."  Joint Pretrial Stipulation, Plaintiffs' Statement at 3.  Defendants are in the

business of selling a variety of home furnishings, including indoor and outdoor furniture,

selling their products wholesale to the furniture trade and through retail operations.

Defendants do not design or manufacture any of the products they offer, but purchase

their products from suppliers.

In support of its copyright infringement claim, Plaintiffs' Complaint contains 19

specific examples of Defendants' alleged infringement with side by side pictures of

Plaintiffs' and Defendants' products.  Complaint, ¶¶ 32-51.  In support of their

trademark infringement and trade dress claims, Plaintiffs present evidence that some of

Defendants' products were sold on a Live Auctioneers website using the terms

"Habersham Style" or "Habersham Styled" or "Compare to Habersham."  Exhibit D to

Plaintiffs' Response to Statement of Facts [sealed at DE 119-3].  Plaintiffs contend that

in addition to their copyrights, they have established a trade dress for "Habersham" that

has become distinctive in the furniture market.  Plaintiffs support this claim with

declarations of independent sales representatives regarding their own views and their

understanding of consumers' views,[1] as well as two emails from customers to

Defendants seeking products that look like "Habersham."  Exhibits A to E of

Defendants' Motion to Strike Declarations [sealed at DE 89-2]; Exhibit E to Plaintiffs'

Response to Statement of Facts [sealed at DE 119-4].

After the parties completed discovery, Defendants moved for summary judgment

as to all claims.  Defendants contend that Plaintiffs' copyright registrations and

applications are invalid for submission of false information to the Copyright Office; that

Plaintiffs' unclean hands in the registration process have injured Defendants so as to

defeat the copyright infringement claims; that Plaintiffs lack a presumption of validity for

certain registered works and all pending applications; that Habersham cannot claim a

copyright for unprotectable expressions; and that the trademark and trade dress claims

fail as a matter of law.  Plaintiffs oppose the motion.

## II.  DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a

---

[1]   Defendants have moved to strike these declarations because the declarants were not disclosed during discovery as persons having knowledge of the claims. Because such declarations are specifically contemplated under Fed. R. Civ. P. 56(c)(4), and because they contain inadmissible hearsay and are not prejudicial to Defendants, the Court will deny the motion to strike based upon an alleged discovery violation.

matter of law."   Fed. R. Civ. P. 56(a).  The movant "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine

issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To

discharge this burden, the movant must point out to the Court that "there is an absence

of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production

shifts and the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Federal

Rule of Civil Procedure 56(e), "[i]f a party fails to properly support an assertion of fact or

fails to properly address another party's assertion of fact [the Court may] grant

summary judgment if the motion and supporting materials – including the facts

considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the judge's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In

making this determination, the Court must decide which issues are material, and "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.  Factual disputes that are irrelevant

or unnecessary will not be counted."  Id. at 248.

### B.  Validity of Registration

Defendants seek summary judgment that at least three of Plaintiffs' copyright registrations are invalid because Plaintiffs failed to disclose known co-authors and a pre-existing work, and failed to limit its claim to appropriate subject matter.[2]  In Original Appalachian Artworks, Inc. v. The Toy Loft, Inc., 684 F.2d 821, 828 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit held that in order for omissions or misrepresentations in a copyright application to render a registration invalid, proof of "scienter" is required, in the form of "intentional or purposeful concealment of relevant information."  See also St. Luke's Cataract and Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1201 (11th Cir. 2009) (affirming jury finding of invalid registration).  In Original Appalachian, the Eleventh Circuit summarized and distinguished the district court decisions relied upon by Defendants in this action.  684 F.2d at 828 (citing Russ Berrie & Co., Inc. v. Jerry Elsner Co., 482 F.Supp. 980 (S.D.N.Y. 1980) and Vogue Ring Creations, Inc. v. Hardman, 410 F. Supp. 609 (D.R.I. 1976)).

Plaintiffs argue in response that its applications were for derivative works and complied with the "check the box" style of the application for copyright registration. Exhibit A to Plaintiff's Response to Statement of Facts [DE 114-1].  Plaintiffs contend that there is no requirement to identify the underlying work that pre-existed Plaintiffs' designs of the Hatfield Occasional Table and Florentina Bed with Garland.  It was only through discovery in this case that Plaintiffs learned the details of the origin of those pre-existing works.  With regard to the Valencia Table and the pre-existing work done

---

[2]  These three registrations are for the Hatfield Occasional Table, Florentina Bed with Garland, and Valencia Table.

by Albert von Oelschlaeger (a/k/a "Mr. Fred Von"), Plaintiffs argue that there is a disputed issue of fact that Fred Von is not a co-author because he performed a work for hire for Plaintiffs.  Mr. Von testified that he believed the table legs were "their property," and he did not believe he owned anything.  Deposition of Albert von Oelschlaeger at 45, Exhibit K to Plaintiff's Response to Statement of Facts [sealed at DE 119-9].

The Court concludes that there are disputed issues of material fact regarding Plaintiff's knowledge and scienter regarding the information submitted on the copyright registrations for the Hatfield Occasional Table, Florentina Bed with Garland, and Valencia Table.  Summary judgment on the issue of an invalid registration is therefore not appropriate.[3]

## C.  Presumptions of Validity

Defendants seek summary judgment that Plaintiffs' copyright registrations are not entitled to a presumption of validity.  Generally, the law provides that in a judicial proceeding, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright. . . ."  17 U.S.C. § 410(c).  If the registration is made more than five years after first publication, then there is no presumption of validity.  Defendants argue that no

---

[3] Defendants also seek summary judgment on their defense of "unclean hands" to the copyright infringement claim, arguing that Habersham's wrongdoing of submitting false information to the Copyright Office is directly related to the infringement claim, and Defendants have been injured because they have stopped selling the allegedly infringing furniture during the pendency of this action.  However, both the law and the parties' briefs acknowledge that the same scienter requirement for invalidity must be met to find "unclean hands."  Original Appalachian Artworks, 684 F.2d at 827-28. Therefore, the motion for summary judgment on the defense of unclean hands is denied due to disputed issues of material fact.

presumption should apply to Plaintiffs' Chantapie Kitchen Island, Hatfield Occasional Table, Palm Court Media Center with Base, and Lancelot Hutch.  In response, Plaintiffs state that they have never sought presumptions with regard to all of their registrations, but only with regard to the Florentina Bed with Garland and the Valencia 60" Dining Table.  In reply, Defendants contend that they have rebutted the presumption of validity as to the Valencia Table with the testimony of Mr. Fred Von.  As described above in the prior section, there are disputed issues of fact regarding Mr. Von's contribution to the Table.  As such, the Court grants Defendants' motion for summary judgment that the Plaintiffs' registrations are not entitled to a presumption of validity with regard to all of its registrations except the Florentina Bed with Garland and the Valencia 60" Dining Table, and denies the motion as to these two registrations.

### D.  Originality and Protected Expression

Defendants seek summary judgment that they have not infringed any of Plaintiffs' copyrights because Plaintiffs seek protection of unprotectable expressions that are not original.  In general, the elements of a copyright infringement claim are: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Baby Buddies, Inc. v. Toys "R" US, Inc., 611 F.3d 1308, 1315 (11th Cir. 2010) (citing Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991));  BUC Intern. Corp. v. International Yacht Council Ltd., 489 F.3d 1129, 1141 (11th Cir. 2007) (copyright holder's "selection, coordination and arrangement of facts, i.e., its compilation" is protectable if original).  The plain language of the copyright statute states that two and three dimensional works of applied art are copyrightable only to the extent that the artistic design incorporates features that can be identified

separately from, and are capable of existing independently of, the utilitarian aspects of the article.  17 U.S.C. § 101.  Since this action relates to furniture, the dispute concerns the artistic portions of the tables, beds, desks, etc.  Defendants assert that because Plaintiffs admittedly incorporate indispensable and standard European design components within their utilitarian furniture products, the copyright protection extends only to the original elements of such a work, which Plaintiffs have failed to identify. Feist, 499 U.S. at 348.  In addition, Defendants contend that the "scènes à faire" doctrine – "stock scenes that naturally flow from a common theme" – precludes a copyright for Plaintiffs' stock use of historical elements.  Beal v. Paramount Pictures Corp., 20 F.3d 454, 459 (11th Cir. 1994); Corwin v. Walt Disney Co., 475 F.3d 1239, 1251 (11th Cir. 2007).

Plaintiffs' position as set forth in the evidence presented is that its designs use classic architectural elements in the creation of original furniture designs, and that it is "the collective artistry and expression in selection, placement, variation, and interplay of the various ornamental elements" that is copyrightable and shown by the designs themselves, not by verbal characterization.  Plaintiff has identified the non-utilitarian elements of carvings, moldings, reliefs, cutaways, columns, crowns, and the quality of its proprietary finishes as derivative yet original expressions that are copyrightable. Compl. ¶¶ 22-23.   As to evidence of copying, Plaintiffs note that the Complaint contains specific references to Plaintiff's products, including side-by-side photographic comparisons with Defendants' allegedly infringing products.  Compl., ¶¶ 33-51.

Plaintiffs' copyrights in this action are both derivative and compiled, meaning that its protection is the "thin."  Intervest Const., Inc. v. Canterbury Estate Homes, Inc., 554

F.3d 914, 921 n.3 (11ᵗʰ Cir. 2008).  A trier of fact must also be mindful of the

idea/expression dichotomy – while an idea may not be copyrightable, a specific

expression may be protected.  Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d

1218, 1224 (11ᵗʰ Cir. 2008).  Although the Eleventh Circuit has stated that summary

judgment is appropriate in certain types of copyright infringement cases where the

crucial issue is substantial similarity – and where there is substantial similarity with

respect to the non-copyrightable elements of the two works compared and substantial

dissimilarity as to the protectable elements, in this particular instance, there are

disputed issues of material fact regarding the substantial similarity of the protectable

arrangement and coordination of the artistic elements of the furniture in question.

Intervest Const., 554 F.3d at 920.  The Court therefore concludes that there are

disputed issues of material fact regarding whether Defendants copied constituent

elements of Plaintiffs' registered copyrights that are original in their selection,

coordination or arrangement, even though those elements are compiled from and/or

derivative of pre-existing works.

### E.  Trademark Infringement – "Habersham" and "Central Park"

Plaintiffs bring claims for federal trademark infringement for Defendants' use of

the term "Habersham" in some of their online advertisements, and for common law

trademark infringement based upon Defendants' use of "Park Ave." as infringment on

Plaintiffs' mark "Central Park."  To prove trademark infringement, a plaintiff must show

that someone used the mark in commerce without consent, and that the use was likely

to cause confusion.  Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1239 (11ᵗʰ Cir.

2008).  There is no dispute that Defendants used the terms in question.  Defendants

contend in their motion that Plaintiffs have completely failed to establish a likelihood of confusion.

The Eleventh Circuit has generally considered the following factors in assessing likelihood of confusion: (1) the strength of the plaintiff's mark; (2) the similarity of the design; (3) the similarity of the products; (4) the similarity of retail outlets and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) any actual confusion.  Id. at 1239; Coach House Restaurant, Inc. v. Coach and Six Restaurants, Inc., 934 F.2d 1551, 1561 (11th Cir.1991); Dieter v. B & H Indus., 880 F.2d 322, 326 (11th Cir.1989).  In applying this test, no single factor is dispositive, but greater weight is given to the type of mark and evidence of actual confusion.  Frehling Enters. v. Int'l Select Group, 192 F.3d 1330, 1335 (11th Cir. 1999).

Defendants argue that Plaintiffs' marks are weak – "Habersham" and "Central Park" are geographic references only.  Plaintiffs contend that the terms have acquired secondary meaning and are strong marks because customers ask for Habersham products by name.  Defendants note that while the products at issue are similar, the parties sell their furniture differently – Defendants primarily sell wholesale and auctions, while Plaintiffs sell to higher-end customers, including more retail, although the record is somewhat in dispute on this point.

On the critical issue of actual confusion, Plaintiffs put forth some evidence of actual confusion, but not enough.  There are two or three instances of customers requesting "Habersham" products from Defendants.  Exhibit E to Plaintiff's Response to Statement of Facts [sealed at DE 119-4].  Defendants contend, however, that these customers are not confused because they know they are not contacting Habersham,

10

they are merely seeking products similar to Habersham.  Plaintiffs also attempt to rely

on the testimony of Matt Eddy, President of Habersham Plantation, who recalls non-

specific instances of customer confusion being told to him.  Deposition of Matt Eddy at

39-45, Exhibit I to Plaintiff's Response to Statement of Fact [sealed at DE 119-7].  The

record also contains the declarations of Plaintiffs' independent sales representatives

which include statements such as "[i]n my experience, it is commonplace for a third

party – such as a furniture retailer, designer, builder, or a consumer – to refer to and

recognize Habersham's style of furniture as being distinct."  Declaration of Virginia

Martina, Exhibit D to Defendants' Motion to Strike Declarations [sealed at DE 89-2].

However, these five declarations all contain inadmissible hearsay, as they contain

statements of other consumers being offered for their truth – that consumers ask for

Habersham products by name.  Thus, upon a review of the entire record, Plaintiff has

not shown any admissible evidence of actual confusion .[4]   Therefore, summary

judgment on Plaintiff's claims for trademark infringement in Counts II and III of its

Complaint shall be granted.

### F.  Trade Dress Claim

Plaintiffs' claim for a trade dress violation under the Lanham Act, 15 U.S.C.

§ 1125(a), is based upon its "distinctive trade dress associated with its furniture

---

[4] Plaintiffs also rely on Defendants' use of the "Habersham" mark in certain online auction advertisements. Exhibit D to Plaintiff's Response to Statement of Facts [sealed at DE 119-3].  Defendants contend that this incident was isolated to one online auction.  Even so, it is important that in these advertisements the mark "Habersham" was always qualified with "style" or "styled" or "compare to," thus again limiting the likelihood of confusion.  Defendants were not representing that they were selling Habersham goods.

collection." Compl., ¶ 74.  Citing similar evidence in response to the trademark issues,

Plaintffs allege that Defendants have used the phrase "Habersham styled" in selling

their own products, thus proving that Plaintiffs' trade dress has "developed secondary

meaning and distinctiveness in the market place." Id.   Defendants argue that Plaintiffs

have failed to put forth evidence of consumer confusion, particularly since Plaintiffs

claim broad trade dress protection.

In a recent decision on precisely this issue regarding Habersham's trade dress,

another Court in this District concluded that summary judgment against Habersham is

appropriate on its trade dress claim.  Habersham Plantation Corporation v. Bernard

Molyneux, et al., Case No. 10-61526-CIV-Dimitrouleas, (S.D. Fla. Aug. 19, 2011)

(Docket Entry 126).  This Court has reviewed that decision, brought to its attention by

Plaintiffs' filing of a Notice of Supplemental Authority in this action [DE 154], and upon a

full review of the record in this action, incorporates that section of Judge Dimitrouleas's

unpublished decision into this Order:

> "'Trade dress involves the total image of a product and may include
> features such as size, shape, color or color combinations, texture,
> graphics, or even particular sales techniques." John Harland Co. v. Clarke
> Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983). Like trademarks, trade
> dress is protected under Section 43(a) of the Lanham Act. AmBrit, Inc. v.
> Kraft, Inc., 812 F.2d 1531, 1535 (11th Cir. 1986).  To succeed on a claim
> for trade dress infringement, a plaintiff must prove: "(1) the product design
> of the two products is confusingly similar; (2) the features of the product
> design are primarily non-functional; and (3) the product design is
> inherently distinctive or has acquired secondary meaning." Dippin' Dots,
> Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1202 (11th Cir.
> 2004). A failure to prove any one element is fatal to a claim of trade dress
> infringement. Id. ("As all three elements are necessary for a finding of
> trade dress infringement, any one could be characterized as threshold.")
> (internal quotation omitted).
>
> A plaintiff attempting to bring a claim for violation of an unregistered product

design trade dress faces a difficult task.  As the United States Supreme Court stated in Wal-Mart Stores, Inc. v. Samara Bros., Inc:

> In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs-such as a cocktail shaker shaped like a penguin-is intended not to identify the source, but to render the product itself more useful or more appealing.

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 213 (2000). Accordingly, "in an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." Id. at 216.

"Secondary meaning is the connection in the consumer's mind between the mark and the provider of the service." Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp), 931 F.2d 1519, (11ᵗʰ Cir.  1991). Establishing secondary meaning is best accomplished by surveys or other quantitative evidence. See Gulf Coast Commercial Corp. v. Gordon River Hotel, 2006 WL 1382072, *12 (M.D. Fla. 2006) (holding that the "many" declarations submitted by plaintiff were insufficient to overcome plaintiff's high burden of proof).  While survey evidence is not required to prove secondary meaning, "[a]ppeals courts have held that survey evidence 'is the most direct and persuasive evidence' to establish secondary meaning." Vital Pharmaceuticals, Inc. v. American Body Bldg., 511 F.Supp.2d 1303, 1311 (S.D. Fla. 2007), quoting Sugar Busters LLC v. Brennan, 177 F.3d 258, 269 (5th Cir. 1999).  To prove secondary meaning, it is not necessary that the relevant consumer group be the retail purchaser. Bauer Lamp Co., Inc. v. Shaffer, 941 F.2d 1165, 1170 (11ᵗʰ Cir. 1991), citing Remcraft Lighting Products, Inc. v. Maxim Lighting, Inc., 706 F.Supp. 855, 858 (S.D.Fla. 1989).

In the absence of consumer survey evidence, four factors that courts consider in determining whether a particular mark has acquired a secondary meaning are as follows:

> (1) [T]he length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's ... business; and (4) the extent to which the public actually identifies the name with the plaintiff's [service].

13

Investacorp, 931 F.2d at 1525.

The Eleventh Circuit has held that the existence of a secondary meaning is a question of fact. Coach House Restaurant, Inc. v. Coach and Six Restaurants, 934 F.2d 1551, 1560 (11th Cir. 1991), *citing* Aloe Creme Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845, 849 (5th Cir.) ("A claim of secondary meaning presents a question of fact."), *cert. denied*, 398 U.S. 928, *reh'g denied*, 400 U.S. 856 (1970).  Accordingly, the Court must determine whether resolving the issue of secondary meaning in this case requires the resolution of a genuine factual issue.  Investacorp, 931 F.2d at 1524.

Defendants urge the Court to rule at summary judgment that Plaintiff has failed in its evidentiary burden to establish secondary [meaning] and, therefore, that Plaintiff's trade dress claim fails. See, e.g., Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 2009 WL 6812111, *11 (S.D. Fla. October 13, 2009) ("In summary, there has simply been no evidence presented that in the public's mind the primary significance of the [alleged trademark and trade dress] is to form an unequivocal connection in the mind of the consumer between any of these elements and Plaintiff. Lacking such evidence, the Court is hard-pressed to find a likelihood of success on the merits as relates to Miller's attempt to establish secondary meaning in either its mark or its trade dress.")  Defendants highlight that Plaintiff has not conducted a survey of the relevant market and cannot present any survey evidence to establish that consumers actually associate its claimed trade dress with Plaintiff.

The Court agrees with Defendants.  That Plaintiff failed to produce survey or other quantitative evidence renders Plaintiff's uphill battle even steeper.  The four declarations of its sales representatives submitted by Plaintiff are woefully insufficient to show the established connection in the consumer's mind between Plaintiff and its claimed trade dress. See Vital Pharmaceuticals, 511 F.Supp.2d at 1312 ("I cannot accept the testimony of only two individuals as sufficient evidence of secondary meaning."); Gulf Coast Commercial, 2006 WL 1382072, at *12 (holding that the "many" declarations submitted by plaintiff were insufficient to overcome plaintiff's high burden of proof of secondary meaning); *compare* Bauer Lamp Co., Inc. v. Shaffer, 941 F.2d 1165, 1170 (11th Cir. 1991) ("Assuming that the relevant consumers were the wholesalers and buyers for the retail stores, *many* of these persons engaged in the lamp trade testified that they knew the lamps were produced by [plaintiff]. Therefore, the evidence was more than adequate for submission of this issue [of secondary meaning] to the jury and to survive a motion for directed verdict.") (emphasis added).  Nor does the Court find the use of

14

"Habersham-style" by third party sellers of other furniture products sufficiently persuasive in light of Plaintiff's high burden of proof; such evidence also can be used to demonstrate that Plaintiff's asserted trade dress is not unique, is widely used by other furniture sellers, and that consumers are not predisposed to equate the feature with the source. Finally, Plaintiffs argue that they spent hundreds of thousands of dollars advertising their designs.  However, courts have repeatedly pointed out that "the dispositive factor is not the extent of the promotional efforts, but their effectiveness." Vital Pharmaceuticals, 511 F.Supp.2d at 1311 (holding that plaintiff did not prove secondary meaning, even though it presented evidence that it extensively advertised its product, spending over 2 million dollars to advertise the product in various media).

Accordingly, the Court finds that Plaintiff has failed to demonstrate that its claimed trade dress has attained the element of secondary meaning, which is fatal to a claim of trade dress infringement.[5] Dippin' Dots, 369 F.3d at 1202.  Therefore, Defendants are entitled to summary judgment on Plaintiff's trade dress claim.

### G.  Damages and Statute of Limitation

Defendants contend that Plaintiffs' damages are limited by the three year statute of limitations for copyright infringement.  In response, Plaintiffs contend that this limitation only applies if Plaintiffs knew or should have known of Defendants' infringement at the beginning of the three-year window.  This issue was also addressed by Judge Dimitrouleas, and the Court again agrees with his conclusion – this time that summary judgment is not appropriate due to the general discovery rule:

The argument regarding damages posed by Defendants was addressed and rejected by the Ninth Circuit in Polar Bear Productions, Inc. v. Timex Corp.:

In copyright litigation, the statute of limitations issue that

---

[5] Because "[a] failure to prove any one element is fatal to a claim of trade dress infringement," Dippin' Dots, 369 F.3d at 1202, the Court does not address Defendants' additional argument that Plaintiff has failed to demonstrate likelihood of confusion between its furniture pieces and Defendants' pieces.

often arises is that the plaintiff filed its copyright claim more than three years after it discovered or should have discovered infringement. Here, Timex makes a different, novel argument and asks us to rule that § 507(b) prohibits copyright plaintiffs from obtaining any damages resulting from infringement occurring more than three years before filing the copyright action, regardless of the date the plaintiff discovered the infringement. In Kling v. Hallmark Cards, Inc., 225 F.3d 1030, 1041-42 (9th Cir. 2000), we left for another day precisely this argument; that day is now upon us. We conclude that § 507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discover-and reasonably could not have discovered-the infringement before the commencement of the three-year limitation period. Because Polar Bear did not discover Timex's infringement until within three years of filing suit, Polar Bear may recover damages for infringement that occurred outside of the three-year window.

Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700, 705-06 (9th Cir. 2004).  Accordingly, under the "discovery rule," the three year statute of limitations does not bar recovery of damages incurred more than three years prior to the filing of suit if the plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.  While the Eleventh Circuit has not decided this issue, it does apply the discovery rule generally in assessing the timeliness of a suit. See Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir. 1990) ("a federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action.").  While there is a split in authority as to whether to apply the "discovery rule" or the "injury rule" to when a claim accrues under § 507(b), nine of the Circuit Courts have applied the discovery rule to civil actions under the Copyright Act.  See William A. Graham Co. v. Haughey, 568 F.3d 425, 433 (3rd Cir. 2009) ("Although we have not previously addressed this issue, eight of our sister courts of appeals [First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth] have applied the discovery rule to civil actions under the Copyright Act.").  Additionally, the Middle District of Florida has expressly adopted the rule. Thornton v. J Jargon Co., 580 F.Supp.2d 1261, 1286 (M.D. Fla. 2008).  This Court, likewise, finds the discovery rule to be the more reasoned approach.

Applying that rule to the case at hand, for Defendants to be entitled to summary judgment on alleged acts of infringement that occurred prior to August 19, 2007, Defendants would have to demonstrate, by undisputed facts, that Plaintiff "knew or reasonably should have known" of

16

those acts of infringement occurring more than three years before this lawsuit was filed.  Defendants' motion fails in this aspect.  Accordingly, Defendants' partial motion for summary judgment is denied as to whether the three-year statute of limitations of the Copyright Act bars Plaintiff's copyright infringement claims based on alleged acts of infringement that occurred prior to August 19, 2007.

Upon a review of Defendants' arguments and the record in the present action, this Court reaches the same conclusion, that summary judgment on the issue of whether Plaintiffs' damages are limited is inappropriate, given the existence of a disputed issue of material fact regarding Plaintiffs' knowledge of Defendants' infringement.

### III.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     Defendants' Motion for Summary Judgment [DE 62] is hereby **GRANTED in part** as to Counts II, III and IV, the trademark and trade dress claims, and **DENIED** in all other respects;

2.     Defendants' Motion to Strike Various Declarations [DE 68] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of September, 2011.

_____
JAMES I. COHN
United States District Judge

Copies to:

All counsel of record