UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61532-CIV-COHN

HABERSHAM PLANTATION CORPORATION,
a Georgia corporation, and HABERSHAM
INVESTMENT PARTNERSHIP, L.P., a
Georgia corporation,

Magistrate Judge Seltzer

    Plaintiffs,

v.

ART & FRAME DIRECT, INC., a Florida corporation,
WORLD OF DECOR, INC., a California corporation,
THE LIQUIDATION STATION INC., GLOBAL
IMPORTING, INC., WORLD OF DECOR BLUE
HERON, LLC, CLOSING FOREVER, LLC,
DECORATOR'S RESERVE, INC., ART & FRAME
DIRECT/TIMELESS INDUSTRIES GEORGIA, INC.,
WORLD OF DECOR, INC., a Florida corporation,

    Defendants.
_____/

### ORDER GRANTING IN PART MOTION FOR PERMANENT INJUNCTION
### ORDER GRANTING IN PART MOTION FOR PREJUDGMENT INTEREST

**THIS CAUSE** came before the Court upon Plaintiffs' Motion for Entry of Permanent Injunction and Award of Prejudgment Interest [DE 223], Defendants' Response in Opposition [DE 227], and Plaintiffs' Reply Memorandum [DE 229]. The Court has carefully considered the filings and is otherwise fully advised in the premises.

### I.  BACKGROUND

On September 28, 2011, the Court entered a final judgment in favor of Habersham Plantation Corporation and Habersham Investment Partnership, L.P. ("Plaintiffs"), and against Defendants Art & Frame Direct, Inc., et al. Plaintiffs obtained a jury verdict for $1,376,000 in damages resulting from infringement of 13 of 16

copyrighted furniture designs [DE 212], out of a total of 19 claims asserted in the Complaint [DE 1].  On October 26, 2011, Plaintiffs filed the present motion for a permanent injunction and for prejudgment interest.  Defendants oppose the motion.

## II.  DISCUSSION

### A.  Permanent Injunction

Plaintiffs seek a permanent injunction prohibiting Defendants from copying, manufacturing, or selling any of Defendants' products which have been found by the jury to infringe the Plaintiffs' designs, prohibiting Defendants from using the phrases "Habersham" or "Habersham Style," and for Defendants to destroy the over one hundred pieces of similar furniture in their inventory.[1]  Defendants argue that Plaintiffs have waived this relief by not seeking it in the Pretrial Stipulation nor by requesting such relief at trial, and do not meet the legal standard to obtain such relief.

As to the waiver argument, the Court notes that Plaintiffs did seek this relief in their Complaint [DE 1], though there is no specific reference in the Joint Pretrial Stipulation regarding injunctive relief, but rather a reference that the Complaint raises the issues for trial [DE 169 at 9].  Defendants contend Plaintiffs cannot obtain this relief pursuant to Fed. R. Civ. P. 59(e).  Under Rule 59(e), there are "three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  Association For Disabled Americans, Inc. v. Amoco Oil Co., 211 F.R.D. 457, 477 (S.D.Fla. 2002).   Such a motion must be filed within 28 days of entry of judgment.

---

[1] The proposed relief contains several other prohibitions on Defendants' actions.  See Exhibit B to Motion [DE 223-2].

Plaintiffs argue that there is new evidence as to the number of pieces of infringing furniture in Defendants' inventory.  See Email from Defendants' counsel to Plaintiffs' counsel, Exhibit A to Motion [DE 223-1].  Plaintiffs contend that not until after trial did they learn of the extent of infringing furniture pieces in the possession of Defendants.  The Court concludes that this evidence is newly available evidence that allows Plaintiffs to invoke Rule 59(e) to seek the additional relief of a permanent injunction against Defendants.

In Ebay, Inc. v. Mercexchange, L.L.C., 547 U.S. 388, 392-93 (2006), the United States Supreme Court held that a permanent injunction is not automatically imposed upon a jury verdict of infringement (patent or copyright).  Rather, a district court must exercise its discretion consistent with traditional principles of equity.  547 U.S. at 394.  A "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Id. at 391.

Plaintiffs cite to the testimony of Tom Skipper to support their claim of irreparable injury, wherein Skipper testified that retailers will substitute less expensive products for products such as Habersham.  Exhibit F to Reply Memorandum [DE 229-1].  Such substitution would therefore extend damages beyond the legal remedy of Plaintiffs obtaining damages for sales made by Defendants.  If additional, unquantifiable sales would be lost due to the public perception that cheaper, similar products are available, Plaintiffs would suffer both reduced sales and reduced sale prices.  Defendants argue

3

that the testimony referenced by Plaintiffs is speculative and cannot form the basis for an irreparable harm finding.  Although a close question, the Court concludes that Plaintiffs have shown that they have suffered an irreparable injury.

Turning next to the adequacy of legal remedies, Defendants contend that the jury award in this case, in an amount "over three fourths of the total gross revenue or net sales of the defendants," is more than adequate compensation.  Plaintiffs rely on similar arguments in the above discussion of irreparable injury, in that there is additional loss of product goodwill that cannot be quantified.  Whether such an injury can be redressed by money damages is a close question.  Nevertheless, the Court agrees with Plaintiffs that based upon the record at trial and the newly available evidence in Exhibit A, remedies available at law are inadequate to compensate for their injuries.

In considering the balance of hardships between Plaintiffs and Defendants, the Court notes that since the filing of the Complaint, Defendants agreed to stop selling their infringing furniture.  Plaintiffs contend that an injunction is necessary to preserve this status quo with little hardship to Defendants.  Defendants argue that there is no evidence that they sold the products prior to this action with knowledge of infringement.  Plaintiffs point out that evidence of intent was appropriately excluded from trial under the Copyright Act.  The Court concludes that Plaintiffs have shown that a remedy in equity is warranted to maintain the status quo, now that infringement has been proven.  Finally, the public interest would not be disserved by a permanent injunction, as the public benefits in the long run by enforcement of copyrights and a ban on selling infringing items.  The Court will therefore issue a permanent injunction.

## B.  Scope of Permanent Injunction

Defendants object to two subsections of Plaintiffs' proposed permanent injunction, Exhibit B to the Motion, as overbroad.  The first concerns Plaintiffs insertion of the term "materially" to modify "copied or derived," in paragraph 1.c of the proposed permanent injunction.  Defendants contend that because Plaintiffs' copyrights themselves are compilations and/or derivative of earlier designs, therefore having "thin" protection, it is improper for the Plaintiffs to use an injunction to expand the protection for its thin derivations from competition from other derivative designs.  Plaintiffs do not address the inclusion of the word "materially" in their reply.  The Court agrees with Defendants that paragraph 1.c of the proposed injunction is overbroad and shall not be included.

Defendants next object to paragraph 1.d, which forbids Defendants from using the phrases "Habersham" or "Habersham style" to describe, identify or designate any furniture products.  Defendants contend that the Court's dismissal of the trademark claims at the summary judgment stage makes such relief inappropriate.  The Court agrees and will strike paragraph 1.d from the permanent injunction.

Finally, the Court will make one further change and give the parties a suggestion. In paragraph 2 of the proposed injunction, Defendants would be ordered to destroy all infringing products within 30 days from the date of the order.  Rather than destroy the furniture, the Court encourages the parties to agree to have Defendants donate the furniture in Plaintiffs' name to homeless shelters, foster homes, group homes, homes built by organizations for low-income residents, nursing homes or similar residences for disadvantaged persons.  This relief would not harm the copyright or goodwill of

Plaintiffs. The Court will change the deadline to 90 days in order to facilitate agreement about the Court's suggestion.

### C.  Prejudgment Interest

Plaintiffs seek an award of prejudgment interest under the Copyright Act. Although the Act does not expressly authorize prejudgment interest, such authority "can be inferred from congressional purpose and general principles." TMTV Corp., v. Mass Productions, Inc., 645 F.3d 464, 474 (1st Cir. 2011) (noting that "a number of circuits support prejudgment interest awards for copyright infringement; and circuit cases where such awards have been disallowed do not in general apply a categorical ban.").[2]

Defendants first argue that Plaintiffs have waived this relief by not seeking it within the Joint Pretrial Stipulation, nor by raising the issue with the Court after the jury verdict. The Court notes that Plaintiffs did plead for such relief in the Complaint, and did attempt to raise the issue at trial. See Trial Transcript, Vol. 4, p. 800, Exhibit 2 to Defendants' Response [DE 227-2] (Defendants objected to having the expert testimony on prejudgment interest come before the jury). The Court's ruling left the matter for the Court to decide. Since the right to prejudgment interest is not certain until after the jury verdict, Plaintiffs have not waived their right to seek such relief.

An award of prejudgment interest serves to make a copyright holder whole, "for damages properly include the forgone use of money of which the [copyright owner] was wrongly deprived." General Motors Corp. v. Devex Corp., 461 U.S. 648, 655-56 (1983) (patent case). Whether prejudgment interest should be awarded on a damage recovery

---

[2]  Neither side cites to an Eleventh Circuit decision regarding prejudgment interest in a Copyright Act case, nor was the Court able to find one.

6

"is a question of fairness resting within the District Court's sound discretion." Osterneck v. E.T. Barwick Industries, Inc., 825 F.2d 1521, 1536 (11th Cir. 1987) (quoting Wolf V. Frank, 477 F.2d 467, 479 (5th Cir.), *cert. denied*, 414 U.S. 975 (1973)) (both securities actions).  The Court concludes that an award of prejudgment interest in this copyright action is warranted to fully compensate Plaintiffs for the damages that occurred in this case.

Plaintiffs seek the award to begin three years prior to the filing of their Complaint on August 20, 2010.  Defendants oppose this relief and contend that Plaintiffs should not be rewarded for their delay in filing this action.  Plaintiffs correctly note that the jury specifically found that Defendants failed to prove that Plaintiffs knew or should have known about the Defendants' sale of the accused furniture more than three years before the filing of the Complaint.  Jury Verdict, p. 4 [DE 212].   The Court concludes that the appropriate date to begin prejudgment interest is three years prior to the filing of the Complaint.

As to the rate of interest, Plaintiffs seek an award utilizing the Florida state statutory rates, which varied during the relevant period from 11% in 2007 to 6% in 2011. Defendants ask the Court to use the far lower federal post-judgment rate, which has ranged from 5% at the beginning of 2007 to less than 0.4% at the end of 2008, a level below which it has remained through today.  Plaintiffs contend that using the post-judgment rate would allow Defendants to keep their pre-recession profits while imposing later occurring, historically low interest rates upon Plaintiffs.  See TMTV, Corp., 645 F.3d at 475.

A third and more fair option exists.  In the admiralty context, the Eleventh Circuit

has held that it is the general rule to award prejudgment interest by using the prime rate during the relevant period.  <u>Sunderland Marine Mut. Ins. Co., Ltd. v. Weeks Marine Constr. Co.</u>, 338 F.3d 1276, 1280 (11th Cir. 2003) (cases cited therein).  The prime rate at the end of 2007 was 7.25% (as compared to the Florida rate of 11%), while it was 4.0% at the end of 2008 (Florida rate still 11%), and 3.25% thereafter (Florida rate was 8% in 2009 and 6% thereafter).

      In exercising its discretion under the Copyright Act and relevant case law, the Court will utilize the prime rate to determine prejudgment interest, based upon the damage award chart provided by Plaintiffs.[3]  See Exhibit E to Motion.  The prime rate is not so low as to make an award of prejudgment interest negligible, nor is it as high as the Florida rate, which could unfairly reward Plaintiffs' delay in filing this action.  The Court will use the average prime rate for each calendar year, with simple interest compounded annually.[4]  For 2007, because prejudgment interest begins on August 20, 2007, three years prior to the filing of the Complaint, an average rate of 7.69%[5] will be used on the damages of $100,000, for an amount of $7,690.  For 2008, the average

---

[3] The Court recognizes that in 2004, this Court used the post-judgment rate in awarding prejudgment interest in a patent case.  However, the issue of how to calculate prejudgment interest was not contested in that action.  See <u>Aqua Massage Intern., Inc. v. Licht</u>, 2004 WL 2359346, *3 (S.D. Fla. Oct. 12, 2004).

[4] The Court takes judicial notice of the Prime Interest Rate History.  <u>See</u> http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm.

[5] This approximate average rate was calculated upon the following data: on August 20, 2007, the prime rate was 8.25%; on September 18, 2007, it was 7.75%; on October 31, 2007, it was 7.5%; and on December 11, 2007, it was 7.25%. <u>See</u> http://www.wsjprimerate.us/wall_street_journal_prime_ rate_history.htm.

rate over the course of the year was 5.1%,[6] which yields $48,195 in prejudgment interest on the damages of $945,000 (the total damages from infringed products in 2008 from Plaintiffs' Exhibit E). For 2009, the rate of 3.25% yields $40,137.50 in prejudgment interest on the damages of $1,235,000 (total damages from infringed products in 2009 from Plaintiffs' Exhibit E). For 2010, Plaintiffs have limited the award of prejudgment interest for the Central Park 3 Drawer Chest, the Valencia 60" Dining Table, and the Chantepie Kitchen Island to the date of the filing of the Complaint. Therefore, the 2010 award is the sum of the 2009 award, $40,137.50, plus $4,038.28 for 133 days from August 20 until December 31, 2010, at 3.25%. For 2011, the award is $33,203.07, consisting of the entire damage award of $1,376,000 at 3.25%, but reduced to 271 days from January 1 through September 28, 2011. Thus, the total prejudgment interest award is $173,401.35.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Entry of Permanent Injunction and Award of Prejudgment Interest [DE 223] is hereby **GRANTED in part** and **DENIED in part**, as discussed above;

---

[6] This approximate average rate was calculated upon the following data: on January 1, 2008, the prime rate was 7.25%; on January 22, 2008, the rate was 6.50%; on January 30, 2008, the rate was 6.00%; on March 18, 2008, the rate was 5.25%; on April 30, 2008, the rate was 5.00%; on October 8, 2008, the rate was 4.50%; on October 29, 2008, the rate was 4.00%; and on December 16, 2008, the rate dropped to 3.25%, where it has remained to this day. See http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm.

2. The Court will separately enter an amended judgment which includes prejudgment interest and a permanent injunction.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 15th day of December, 2011.

copies to:

counsel of record on CM/ECF

JAMES I. COHN
United States District Judge